## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## CIVIL CASE NO. 1:14-cv-292-MR-DSC

JENNIFER NICOLE FOSTER,    )
    )
        Plaintiff,    )
    )
    vs.    )
    )
AMANDA FISHER, Magistrate, 28th    )
Judicial District, State of North    )
Carolina, in her official and individual )
capacities, JACK VAN DUNCAN,    )
Sheriff, Buncombe County, North    )        O R D E R
Carolina, in his official and individual )
capacities, JOHN DOE BUNCOMBE    )
COUNTY SHERIFF DEPUTY NUMBER )
ONE, in his official and individual    )
capacities, CALVIN HILL, Chief    )
District Court Judge, 28th Judicial    )
District, State of North Carolina, in    )
his official and individual capacities,    )
    )
        Defendants.    )
_____ )

**THIS MATTER** is before the Court on the Defendants' Motions to Dismiss [Docs. 41; 43; 48]; the Magistrate Judge's Memorandum and Recommendation regarding the disposition of those motions [Doc. 55]; and the Plaintiff's Objections to the Magistrate Judge's Memorandum and Recommendation. [Doc. 58].

## PROCEDURAL BACKGROUND

The Plaintiff initiated this matter on November 7, 2014, by filing her Complaint. [Doc. 1]. Plaintiff's Complaint named as Defendants Amanda Fisher, a Magistrate for North Carolina's 28th Judicial District, and Jack Van Duncan, Sheriff of Buncombe County, North Carolina. The Complaint asserted various claims against Defendant Fisher in her official and individual capacities and one claim against Defendant Duncan in his official capacity only. [Id. at 8-9].

On January 21, 2015, Plaintiff filed, as a matter of right, her First Amended Complaint. [Doc. 22]. Therein, Plaintiff asserted additional claims against Defendant Duncan in his individual and official capacities. [Id. at 1-4]. Plaintiff added as a Defendant John Doe Buncombe County Sheriff Deputy Number One, whom Plaintiff sues in his/her individual and official capacities. [Id. at 3].

On January 30, 2015, Plaintiff filed a Motion for Leave to File an Amended Complaint. [Doc. 24]. On March 11, 2015, the Magistrate Judge granted Plaintiff such leave and directed the Clerk to file Plaintiff's Second Amended Complaint which was attached to her motion. [Doc. 32]. Plaintiff's Second Amended Complaint was docketed March 11, 2015. [Doc. 33]. The Second Amended Complaint, among other things, added as a Defendant

Calvin Hill, Chief District Court Judge for North Carolina's 28th Judicial District, in his official and individual capacities.

On March 30, 2015, Defendants Fisher and Hill, in their official and individual capacities, filed a joint motion to dismiss all claims against them pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. [Doc. 41]. On April 2, 2015, Defendant Duncan, in his official and individual capacities, filed a Rule 12(b)(6) motion to dismiss all claims against him. [Doc. 43]. On May 1, 2015, Defendant John Doe, in his/her official and individual capacities, filed a Rule 12(b)(6) motion to dismiss all claims against him/her. [Doc. 48]. Plaintiff responded to each of the Defendant's motions. [Docs. 49; 53].

Pursuant to 28 U.S.C. § 636(b) and the standing Orders of Designation of this Court, the Honorable Davis S. Cayer, United States Magistrate Judge, was designated to consider the Defendants' motions and to submit to this Court a recommendation for their disposition. On June 17, 2015, the Magistrate Judge filed a Memorandum and Recommendation ("M&R") in this case containing proposed conclusions of law in support of a recommendation that each of the Defendant's Motions to Dismiss be granted and Plaintiff's action be dismissed with prejudice. [Doc. 55]. After seeking

and obtaining an extension of time, the Plaintiff timely filed her Objections to the Magistrate Judge's M&R on July 13, 2015. [Doc. 58].

## FACTUAL BACKGROUND

Accepting Plaintiff's factual allegations as true for the purposes of resolving the Defendants' motions, Plaintiff states the following. She is an attorney who is proceeding *pro se* in this matter. She brought this action pursuant to 42 U.S.C. § 1983 for monetary, declaratory, and injunctive relief arising from her arrest and incarceration for a criminal contempt conviction in state court.

In mid-October, 2011, the City of Asheville issued, in Plaintiff's name, a permit for members of the Occupy Asheville political movement to camp in a city parking lot at the north end of Lexington Avenue for approximately four months. [Doc. 1 at 2]. On or about November 2, 2011, members of Occupy Asheville held a large rally and march. Plaintiff did not participate in the march. [Id. at 3]. On November 5, 2011, Plaintiff received telephone calls from Occupy Asheville members informing her that the Asheville Police Department had begun arresting some Occupy Asheville members, who had participated in the events of November 2, 2011, for "marching without a permit." [Id.]. Plaintiff was asked to investigate how many warrants were outstanding, who was subject to arrest, and how such persons could turn

themselves in to authorities.  [Id.].   "After multiple phone calls, [Plaintiff] decided to walk to the Magistrate Judge's [sic] office in the Buncombe County Detention Center, just blocks away, to investigate the nature of the outstanding warrants and attempt a peaceful resolution of the situation." [Id.].

Plaintiff walked to the Buncombe County Detention Facility ("BCDF"), went inside where the magistrate's office is located, and waited outside the magistrate's office until two individuals present inside left.  [Id.].  Plaintiff then entered the magistrate's office alone.  [Id.]. "As Plaintiff entered the office, she introduced herself as 'Jen Foster, the attorney working with the Occupy Asheville group,' and said, something to the effect of, 'I came to find out what the hell was going on with APD arresting Occupy protesters for marching without a permit.' the Magistrate, Defendant Fisher, told Plaintiff to 'watch her language,' but said nothing else before resuming the conversation regarding the outstanding warrants." [Id.].  Plaintiff asked Fisher how many warrants were outstanding and whether there was a procedure for Occupy protesters to self-surrender. Plaintiff alleges that Fisher refused to provide her with any information other than to check to see whether an arrest warrant had been issued for Plaintiff.  [Id.]. Plaintiff told Fisher such a check was unnecessary since she (Plaintiff) had not attended the march on November

2, 2011.  Fisher nevertheless reviewed the list of active warrants and informed Plaintiff there were none for her arrest.  [Id. at 4]. Plaintiff became frustrated, and on her way out the door to leave stated, "what the fuck is going on around here? this is a bunch of bullshit." [Id.].  Plaintiff then walked outside the BCDF.

Two Buncombe County Sheriff's Deputies located Plaintiff outside the BCDF and placed her under arrest. Plaintiff asked the officers "what the F-where [sic] the charges," to which the officers did not respond.  Plaintiff was processed and brought to the magistrate window from the booking side of the BCDF where she was served with a Judgment of Conviction of Contempt of Court imposing a five day active sentence. [Id.].  Approximately thirty minutes later, Plaintiff filed an appeal of her conviction and sentence. [Id. at 5].  Fisher set a $10,000 "cash-only" bond pending Plaintiff's appeal.  [Id.]. Plaintiff was unable to post the $10,000 "cash-only" bond.  [Id.].

Plaintiff was incarcerated for approximately forty-eight hours before being released on Monday, November 7, 2011, by the Honorable James Downs, North Carolina Superior Court Judge, who reduced Plaintiff's bond to $500 unsecured and ordered her release. [Id.]. Plaintiff alleges that during her first twenty-four hours of confinement she was placed in a large holding cell that was "intentionally kept at a low temperature." [Id. at 6]. Her request

to turn up the heat was denied. Plaintiff further alleges that other detainees wore "toilet paper" socks to keep their feet warm. Plaintiff alleges that the low temperature prevented her from resting. [Id.]. Plaintiff asserts that Sheriff Duncan is liable for the low temperature in the jail because he had actual or constructive knowledge that the BCDF officers were following a policy to cause sleep deprivation. [Doc. 22].

Plaintiff alleges that during her second twenty-four hours of confinement she was placed on observation status in a solitary cell by Defendant Doe and forced to stare at a florescent light, with guards knocking on the cell window every fifteen minutes. [Doc. 1 at 6]. Plaintiff alleges that Defendant Doe, who was "in charge" at the BCDF during Plaintiff's second 24 hour detention, intentionally imposed these conditions of confinement with the intent to deprive her of sleep in retaliation for exercising her First Amendment rights as the attorney for the Occupy Movement. [Doc. 22 at 3]. Plaintiff further alleges that Defendant Duncan had either direct or constructive knowledge of the pattern and practices of BCDF to keep jail temperatures low and to administer sleep deprivation tactics to inmates and that he was deliberately indifferent to such pattern or practices. [Id. at 4].

On December 1, 2011, Plaintiff's contempt conviction was heard *de novo* by Superior Court Judge James Downs. [Doc. 1 at 6]. Plaintiff

appeared *pro se* and testified on her own behalf. Defendant Fisher was called by the state and testified against Plaintiff. [Id.]. Fisher testified that, in total, Plaintiff "made approximately five statements containing the word 'fuck.' After the third or fourth time [Plaintiff] said 'fuck,' the magistrate 'informed her that [the magistrate] was going to hold her in contempt.' [Plaintiff] continued cursing and walked towards the door. Although the magistrate told [Plaintiff] to stop and return because she had been held in contempt, the [Plaintiff] exited the office." In re Foster, No. COA12-865, 2013 WL 2190072, slip op. at 1 (N.C. Ct. App. 2013) (unpublished). Plaintiff asserts such testimony by Defendant Fisher "constitutes false, actionable material perjury causing extensive ongoing damage." [Doc. 1 at 7]. Judge Downs affirmed Plaintiff's contempt conviction but imposed a sentence of time served. [Id. at 6]. Plaintiff appealed to the North Carolina Court of Appeals who vacated her criminal contempt conviction. While the appellate court agreed "that [Plaintiff's] behavior was contemptuous," it concluded that her conviction had to be vacated because the magistrate did not, prior to holding her in contempt, give Plaintiff a summary opportunity to present reasons not to impose a sanction as required by statute. Foster, slip op. at 7-8.

Finally, in her Second Amended Complaint, Plaintiff names Chief District Court Judge Calvin Hill of North Carolina's 28th Judicial District as a Defendant in both his official and individual capacities. [Doc. 33]. Plaintiff alleges that Defendant Hill had actual or constructive knowledge of illegal patterns and practices by Defendant Fisher, and her magistrate colleagues in Buncombe County, to deny bond hearings, impose illegal "cash-only" bonds, and other practices regarding bonds, intentionally designed to prevent detainees from being able to obtain bond, especially over weekends. [Id. at 5-6]. On December 12, 2011, Plaintiff filed a petition with Chief Judge Hill to have Fisher removed as a magistrate. [Id. at 2]. On December 19, 2011, Chief Judge Hill dismissed Plaintiff's petition by written order signed that day. [Id. at 12-14]. Plaintiff alleges that Chief Judge Hill summarily dismissed the petition without addressing Plaintiff's allegations of Fisher's alleged misconduct. [Id. at 3].

## STANDARD OF REVIEW

The Federal Magistrate Act requires a district court to "make a *de novo* determination of those portions of the report or specific proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In order "to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient

specificity so as reasonably to alert the district court of the true ground for the objection." United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007). The Court is not required to review, under a *de novo* or any other standard, the factual findings or legal conclusions of the magistrate judge to which no objections have been raised. Thomas v. Arn, 474 U.S. 140, 150 (1985). Additionally, the Court need not conduct a *de novo* review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).

## **DISCUSSION**

As previously noted, Magistrate Judge Cayer recommended that the Defendants' Motions to Dismiss be granted and Plaintiff's action as presented in her Second Amended Complaint be dismissed with prejudice. [Doc. 55]. The Plaintiff objects to the M&R on six grounds. First, Plaintiff states that the M&R does not refer to her response [Doc. 53] filed in opposition to Defendant Doe's dismissal motion and she contends, therefore, that the Magistrate Judge never considered her arguments contained therein. [Doc. 58 at 1]. Second, Plaintiff states that the M&R does not adequately address her claim made against Defendant Fisher for Fisher's alleged perjury at Plaintiff's trial *de novo* in Buncombe County

Superior Court. [Id. at 2]. Third, Plaintiff states that the M&R does not adequately address her claim made against Defendant Hill who "is being sued on the basis of *supervisory liability* over Fisher and a 'rouge' [sic] magistrate's office." [Id. at 3]. Fourth, Plaintiff states that the M&R "failed to acknowledge Plaintiff has asserted claims for declaratory and injunctive relief on all counts, which is not barred by judicial immunity, to Plaintiff's knowledge." [Id. at 4]. Fifth, Plaintiff states that the M&R erroneously concludes that Defendant Fisher is entitled to absolute judicial immunity. [Id. at 4-9]. Sixth, Plaintiff states that the M&R erroneously concludes that Plaintiff failed to allege, as against Defendants Duncan and Doe, "any serious deprivation of a basic human need to support a 1983 claim upon her allegations [of] intentional sleep deprivation for 48 hours, finding, without any citation of authority, this to be *de minimus* injury." [Id. at 9-11].

## I. Failure to Reference Plaintiff's Response.

Plaintiff states that the M&R does not refer to her response [Doc. 53] filed in opposition to Defendant Doe's dismissal motion and she contends, therefore, that the Magistrate Judge never considered her arguments contained therein. [Doc. 58 at 1]. While Plaintiff is correct that the Magistrate Judge did not specifically reference her response to Defendant Doe's

dismissal motion, this is no basis upon which to deny Defendant Doe's motion.

As set forth in the Standard of Review section, supra, the objecting party must point to the legal errors of the Magistrate Judge contained within his M&R.  Thomas, 474 U.S. at 150; Midgette, 478 F.3d at 622; Orpiano, 687 F.2d at 47.  Therefore, an objection such as this one would ordinarily be summarily rejected for that reason.  It is noted that the Plaintiff is a North Carolina attorney who is proceeding pro se.  This reinforces the Court's conclusion that her first objection should be rejected without further discussion.  The Plaintiff, however, has demonstrated in her filings that she is so unfamiliar with the ordinary manner of proceeding in this Court, with the requirements of the law pursuant to 28 U.S.C. § 636 in particular, and with the law at issue in this case in general, that the Court will address Plaintiff's objections herein as though she were a non-attorney proceeding pro se. Therefore, the Court will address the issues raised by the Plaintiff in her Response regarding her claim against Defendant Doe as though they had been presented as objections to the M&R.

To survive a Rule 12(b)(6) motion, a party's allegations, treated as true, are required to contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)

(emphasis added). On the one hand, the claim need not contain overly "detailed factual allegations[.]" Id. at 555. On the other hand, however, "a formulaic recitation of the elements of a cause of action will not do[,]" nor will mere labels and legal conclusions suffice. Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The mere possibility that the defendant acted unlawfully is not sufficient for a claim to survive a motion to dismiss. Twombly, 550 U.S. at 570. The touchstone, therefore, is plausibility and not possibility.

The Court must accept the truthfulness of all factual allegations but must separate and reject "bare legal conclusions." Aziz v. Alcolac, Inc., 658 F.3d 388, 391 (4th Cir. 2011). As the Fourth Circuit has noted, Twombly and Iqbal "require that complaints in civil actions be alleged with greater specificity than previously was required." Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012). Although a Rule 12(b)(6) motion typically tests a complaint's legal sufficiency based upon the facts pleaded therein, it is also the proper mechanism to evaluate an affirmative defense if the substance of the defense "appears on the face of the pleading" rendering dismissal appropriate. Brooks v. City of Winston-Salem, 85 F.3d 178, 181 (4th Cir.

1996) citing, 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 352 (1990).  A complaint showing that the statute of limitations has run on the claim is the most common situation.  Id.

Defendant Doe seeks the dismissal of Plaintiff's claim contending it is barred by the statute of limitations.  [Doc. 48].  When a civil action arises under an Act of Congress enacted before December 1, 1990 — and therefore is not governed by 28 U.S.C. § 1658's four-year statute of limitations — federal courts apply the state's most analogous statute of limitations.  Jones v. R.R. Donnelley & Sons, Co., 541 U.S. 369, 382 (2004); Wilson v. Garcia, 471 U.S. 261, 265-70 (1985).  When a 42 U.S.C. § 1983 action is brought in federal court within North Carolina, the State's three-year statute of limitations for personal injuries under N.C. Gen. Stat. § 1-52(16) applies.  Brooks, 85 F.3d at 181.

Plaintiff claims in her First Amended Complaint that, during "the second 24-hours of her holding" in the BCDF, Defendant Doe intentionally harmed her by a strategy intended to cause her sleep deprivation, to wit, knocking on her cell window every fifteen minutes and forcing her to stare at a florescent light.  [Doc. 22 at 3]. According to Plaintiff's allegations, "the second 24-hours of her holding" would have encompassed the night of Sunday, November 6, 2011, until she was released the following day at her

court appearance. [Doc. 1 at 6]. Plaintiff asserts she "was adversely psychically [sic] and mentally affected due to these combined conditions of confinement *during* her Superior Court appearance on Monday, November 7, 20[11]." [Id. (emphasis added)]. Plaintiff's cause of action against Defendant Doe, therefore, accrued no later than November 7, 2011, because she possessed sufficient facts about the alleged harm done to her at that time. Brooks, 85 F.3d at 181. The three-year limitations period on Plaintiff's claim against Defendant Doe thus would have expired on November 7, 2014.

Plaintiff filed her original Complaint on that date, November 7, 2011, but did not name Defendant Doe therein. Plaintiff argues that her omission in this regard should be excused for two reasons. First, she simply made a mistake by not naming a "place-holder" John Doe at the outset and, in any event, the Sheriff, Defendant Duncan, had "clear notice of all the events in question." Plaintiff's subsequent addition of Defendant Doe, according to her argument, should therefore relate back to the time she filed her original Complaint. [Doc. 53 at 2]. Second, any limitations period applicable to Defendant Doe was "temporarily tolled as the result of [Plaintiff's] disabling PTSD and medical conditions arising from Defendants' conduct, which led to temporary 'incompetence' as defined by N.C. Gen. Stat. § 35A-1101(7) (1995) and therefore tolled the applicable statute of limitations in accordance

with N.C. Gen. Stat. § 1-17(a)(3)(1996)." [Id.]. Neither of these arguments saves this claim from the operation of the statute of limitations.

Plaintiff's first argument, that her naming Defendant Doe in her First Amended Complaint should relate back in time to her original Complaint, is governed by Rule 15 of the Federal Rules of Civil Procedure. When asserting a claim against a party who is not named in an original complaint, that rule provides that an amendment relates back to the date of the original pleading if: (1) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading; (2) the party to be brought in by amendment received such notice of the action such that he will not be prejudiced in defending on the merits; and (3) the party knew or should have known that the action would have been brought against him but for a mistake concerning the proper party's identity. Fed.R.Civ.P. 15(c). As explained by the court of appeals:

> At bottom, the inquiry, when determining whether an amendment relates back looks at whether the plaintiff made a mistake in failing to name a party, in naming the wrong party, or in misnaming the party in order to prosecute his claim as originally alleged, and it looks into whether the rights of the new party, grounded in the statute of limitations, will be harmed if that party is brought into the litigation. When that party has been given fair notice of a claim **within the limitations period** and will suffer no improper prejudice in defending it, the liberal amendment policies of the Federal Rules favor relation-back.

<u>Goodman v. Praxair, Inc.</u>, 494 F.3d 458, 471 (4th Cir. 2007) (<u>en</u> <u>banc</u>).

Plaintiff cannot satisfy the requirements of Rule 15(c). Plaintiff freely admits that "she had no knowledge, and still does not, of the proper Sheriff Deputy who ordered the 15-minute observational status with the intent to cause sleep deprivation[,]" and that her inability to find this person "should not defeat this pro se action at this early stage before discovery of the responsible party[.]" [Doc. 53 at 2]. By these admissions, Plaintiff asks the Court to simply read out of the Rule the fundamental requirements of the relation-back provision that focus upon the notice to the new party and the effect on the new party that the amendment will have. "These core requirements preserve for the new party the protections of a statute of limitations. They assure that the new party had adequate notice ***within the limitations period*** and was not prejudiced by being added to the litigation." <u>Goodman</u>, 494 F.3d at 470. Since Plaintiff does not know the identity of Defendant Doe, then, <u>a</u> <u>fortiori</u>, Plaintiff is incapable of showing that such person, prior to November 7, 2014, had notice of her claim and knew or should have known that she would sue him/her.[1]

---

[1] To be sure, the significance of the notice requirement inuring to the benefit of a newly named defendant is one with which Plaintiff is acutely aware. Plaintiff, as counsel for a civil defendant in a North Carolina appellate case, prevailed on precisely this issue for her client. <u>See</u>, <u>Reece v. Smith</u>, 188 N.C. App. 605, 609-10, 655 S.E.2d 911, 914 (2008) (without notice to the proper party, plaintiff's amended complaint does not relate back to

More importantly, in her original Complaint, Plaintiff does not even make any allegations against an individual whom she would later pseudonymously identify as Defendant Doe. She only alleges:

> 55. During the second 24-hours of detention, Plaintiff found herself isolated in a solitary cell, forced to continually stare at a florescent light. with guards knocking on the window every fifteen minutes. Intentional sleep deprivation, anxiety and inability to concentrate ensued as Plaintiff was not able to rest with continual 15-minute interruptions.
>
> 56. Plaintiff was adversely psychically and mentally affected due to these combined conditions of confinement during her Superior Court appearance on Monday, November 7, 2001, and has suffered post-traumatic symptoms from their effects after release.
>
> 57. Plaintiff contends that the Buncombe County Detention Center intentionally imposed said conditions of confinement with an intent to affect Plaintiffs ability to appear and represent oneself in court effectively, in addition to imposing conditions of confinement not rationally related to law enforcement, in violation of the Eighth and Fourteenth Amendment to the U.S. Constitution.

[Doc. 1 at 6 (errors as appearing in original)]. She says nothing about whether such conditions were imposed by one or more individuals, and even whether any supervisory authority was present or had knowledge. As such, the person Plaintiff now identifies as Defendant Doe would have no idea that

---

the date of the original filing of the complaint) (Jennifer N. Foster, Asheville, for Defendant-Appellee).

Plaintiff was seeking to bring this action against him/her. For these reasons, Plaintiff's relation-back argument fails.

Plaintiff argues next that any limitations period applicable to Defendant Doe was "temporarily tolled" due to her medical condition and PTSD rendering her incompetent, as defined in N.C. Gen. Stat. § 35A-1101(7).[2] This second argument is equally unavailing. In her response to Defendant Doe's dismissal motion, Plaintiff argues that she possesses facts that "demonstrate that Plaintiff did in fact suffer completely disabling PTSD in the two to three months, if not longer, that followed her release from detention at the BCDF." [Doc. 53 at 2]. Plaintiff, however, has not pleaded these facts in her Complaint or Amended Complaint. These allegations come in her brief entitled "Plaintiff's Response to Motion to Dismiss by John Doe Sheriff Deputy Number One." [Doc. 53], which is not a pleading under Rule 7(a). As such, the Court must disregard it since a Rule 12(b)(6) motion challenges the sufficiency of the pleadings only. See Davis v. Cole, 999 F.Supp. 809, 813 (E.D. Va. 1998) (holding court cannot consider plaintiff's additional allegations contained in response to motion to dismiss filed under Rule

---

[2] "'Incompetent adult' means an adult or emancipated minor who lacks sufficient capacity to manage the adult's own affairs or to make or communicate important decisions concerning the adult's person, family, or property whether the lack of capacity is due to mental illness, mental retardation, epilepsy, cerebral palsy, autism, inebriety, senility, disease, injury, or similar cause or condition." N.C. Gen. Stat. § 35A-1101(7).

12(b)(6) because such memoranda do not constitute "pleadings" under Rule 7(a)).

Even if the Court were to consider the Plaintiff's allegations contained in her brief, she fares no better on her statutory tolling argument.

> [I]f a person's mental condition is such that he is incapable of transacting the ordinary business involved in taking care of his property, if he is incapable of exercising rational judgment and weighing the consequences of his acts upon himself, his family, his property and estate, he is incompetent to manage his affairs. On the other hand, if he understands what is necessarily required for the management of his ordinary business affairs and is able to perform those acts with reasonable continuity, if he comprehends the effect of what he does, and can exercise his own will, he is not lacking in understanding within the meaning of the law, and he cannot be deprived of the control of his litigation or property.

Hagins v. Redevelopment Comm'n of Greensboro, 275 N.C. 90, 106, 165 S.E.2d 490, 500 (1969).[3]

Turning first to the facts outside the pleadings, the facts Plaintiff alleges in her response to Defendant Doe's dismissal motion, she states the following:

---

[3] Hagins directly addressed the determination of a person's competence as contemplated by the definitional phrase, "want of understanding to manage his own affairs" found in the then-applicable N.C. Gen. Stat. § 35-2. Such phrase is substantially similar to the operative phase, "lacks sufficient capacity to manage the adult's own affairs or to make or communicate important decisions concerning the adult's person, family, or property" invoked by Plaintiff and found in N.C. Gen. Stat. § 35A-1101(7) which superseded Section 35-2. 1987 N.C. Sess. Laws, ch. 550, secs. 1 & 7 at pp. 1; 37, repealing N.C. Gen. Stat. § 35-2 and replacing it in part with N.C. Gen. Stat. § 35A-1101(7).

Plaintiff did in fact suffer completely disabling PTSD in the two to three months, if not longer, that followed her release from detention at the BCDF. Specifically, evidence will show that, as the result of Defendants' conduct, Plaintiff was evicted from her housing in late December 2011, the first ever such occurrence, was forced to hold over in such housing for several weeks due to lack of funds, and nowhere to relocate. Plaintiff finally was able to relocate for free to share a room with a friend in middle to late January 2012. Plaintiff had no transportation, was unable to regain her employment after being incarcerated, and no funds. Over that Christmas holiday, Plaintiff suffered extreme degradation of relations with her family as the result of her PTSD and mental health conditions resulting from Defendant's actions, resulting in near complete cessation of all relations for some time thereafter. Plaintiff additionally suffered very severe bronchitis for well over two months following her release due to the cold temperatures in the BCDF, for which she was unable to seek medical attention at the County health facility, due to her disabling mental health conditions until several months later. Completely debilitating mental health PTSD, depression and massive anxiety rendered Plaintiff temporarily incompetent during the time up to the filing of the amended complaint three years after January 21, 2012, if not beyond.

[Doc. 53 at 2-3]. The first four sentences of this passage describe Plaintiff's grim financial circumstances post-release, not her mental health condition. Similarly, Plaintiff's fifth sentence describes a familial conflict occurring over the "Christmas holiday" but does not provide any facts showing how her mental health condition allegedly precipitated or contributed to such conflict. Finally, Plaintiff asserts she suffered from severe bronchitis that remained untreated but does not explain how that is in any way related to her "disabling mental health conditions." In short, Plaintiff is asking the Court to excuse her

failure to meet a filing deadline on competency grounds based on her assertion of **conclusions** that "PTSD, depression and massive anxiety" could be to blame. Plaintiff makes her request without offering any concrete allegations describing how her mental health condition, if at all, prevented her from managing her own affairs as she contends.

Ironically, actual facts alleged by Plaintiff in this matter undercut her mental-health related conclusions. Plaintiff is not entitled to the tolling of the statute of limitations when her factual allegations appearing in the record (albeit in her briefing) show her to be competent. Such **facts** include the following: on November 7, 2011, the Monday immediately following Plaintiff's weekend of confinement, she successfully convinced Judge Downs to reduce her bond and release her from custody; on December 1, 2011, less than one month after Plaintiff was released from custody, she summoned the mental acuity to act as her own attorney in her *de novo* contempt trial before Judge Downs, testifying on her own behalf and cross-examining Magistrate Fisher; on December 12, 2011, Plaintiff marshaled the mental prowess to determine how to file, and then filed, a petition with Chief Judge Hill arguing why the removal of Magistrate Fisher was not only appropriate but necessary; following her conviction by Judge Downs, Plaintiff successfully appealed her case and participated with her appellate team in securing a

reversal of her conviction before the North Carolina Court of Appeals; Plaintiff possessed the mental wherewithal to respond to the North Carolina State Bar's complaint with a written *pro se* answer timely filed with the Disciplinary Hearing Commission; and, most importantly, Plaintiff understood that her claims brought in this matter were governed by North Carolina's three-year statute of limitation, she was able to recall events from 2011 as she prepared her Complaint, and she was able to compose and file her Complaint before the statute expired. These facts demonstrate that Plaintiff understood what was necessarily required for the management of her ordinary business affairs and that she was able to perform those acts with reasonable continuity in the three years following her two-day detention in November, 2011. These facts also demonstrate that Plaintiff comprehended the effects of what she was doing, and that the exercise of her own free will was not based upon any lack of understanding. Probably most importantly, Plaintiff continued to be an attorney duly licensed to practice law in the State of North Carolina until, by her own admission, December 23, 2013. [Doc. 1 at 2]. Even then, the suspension of Plaintiff's law license was not disability related but was an administrative suspension "for failure to return a reporting form to the Continuing Legal Education (CLE) department. Plaintiff's law license remains administratively suspended, but is eligible for reinstatement." [Id.]. It

is truly unsettling for Plaintiff to take the position that she was incompetent to handle her own affairs prior to her suspension but remained duly licensed to handle the affairs of others.  Accordingly, Plaintiff's concessions made in her briefing belie her conclusory claim of incompetency she contends entitle her to tolling.

Turning now to Plaintiff's allegations in her First Amended Complaint, Plaintiff proposes that she "will produce medical evidence of the resulting ongoing severe PTSD, anxiety and depression from this 48 hours of intentional sleep deprivation."  [Doc. 22 at 4]. The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678.  To avoid the operation of the statute of limitations, Plaintiff must have alleged facts supporting the assertion that would establish she lacked sufficient capacity to manage her own affairs or to make or to communicate important decisions concerning her person, family, or property.  N.C. Gen. Stat. § 35A-1101(7).  Notwithstanding the conclusory allegations in Plaintiff's First Amended Complaint [Doc. 22], she has conceded in her briefing that she does not meet the relevant legal criteria for incompetency. Plaintiff's pleadings of record must contain, at the time such pleadings are filed, a factual basis to indicate why it is *plausible* that her mental state was

diminished to a degree such that tolling of the limitations period is warranted. This Plaintiff has failed to do.

Based upon the foregoing, Plaintiff has failed to make a proper objection to the recommendation that the claim against Defendant Doe be dismissed. Plaintiff's claim made against Defendant Doe does not relate back to the time Plaintiff filed her original Complaint and the limitations period has not been tolled. Thus her claim against Defendant Doe is barred by the applicable statute of limitations. For this reason, Plaintiff's first objection is overruled. Plaintiff's claim against Defendant Doe should therefore be dismissed with prejudice.

## II. Claims Against Defendant Fisher.

Plaintiff's second and fifth objections challenge legal conclusions in the M&R as they relate to Plaintiff's claims against Defendant Fisher. Plaintiff states as her second objection that the M&R does not adequately address her perjury claim made against Defendant Fisher that Plaintiff alleges occurred during the trial *de novo* in Buncombe County Superior Court. [Doc. 58 at 2]. Plaintiff states as her fifth objection that the M&R erroneously concludes that Defendant Fisher is entitled to absolute judicial immunity. [Id. at 4-9]. To address Plaintiff's two objections in the most logical manner, the Court will discuss the judicial immunity issue first.

### A. Judicial Immunity.

It is well settled that state court magistrates are entitled to judicial immunity for actions that they take in their judicial capacity. <u>King v. Myer</u>, 973 F.2d 354, 356 (4th Cir. 1992) ("Magistrates are judicial officers, and are thus entitled to absolute immunity under the same conditions as are judges."); <u>Pressly v. Gregory</u>, 831 F.2d 514, 517 (4th Cir. 1987) ("As judicial officers, magistrates are entitled to absolute immunity for acts performed in their judicial capacity."). Further, judicial immunity applies to judicial action even when taken in error, done maliciously, or in excess of authority. <u>Bradley v. Fisher</u>, 80 U.S. (13 Wall.) 335 (1872). Judicial immunity is necessarily broad and the only situations where a judicial officer can be subject to civil suit are where the act complained of is not a judicial act or where the judicial officer acts in the clear absence of all jurisdiction. <u>King</u>, 973 F.2d at 357; <u>Pressly</u>, 831 F.2d at 517.

From the foregoing, then, two requirements must be met for judicial immunity to apply. First, the act complained of must have been a "judicial act." <u>King</u>, 973 F.2d at 357. Second, the judge must have at least colorably had subject matter jurisdiction at the time the challenged act occurred. This second factor is construed broadly — the relevant question is whether the judge "acted in the clear absence of all jurisdiction." <u>Id.</u> at 356–57.

To determine whether Defendant Fisher met the first requirement, namely whether she was performing a judicial act, it is necessary to determine both whether she was performing a function normally accomplished by a magistrate, and whether Plaintiff dealt with her in this official capacity. Id. at 357. North Carolina empowers magistrates, among other things, to issue arrest warrants valid throughout the State, and upon the arrest of a defendant, to conduct an initial appearance and make bail determinations in non-capital matters. N.C. Gen. Stat. § 7A-273(3), (5), & (7). North Carolina courts have found that a magistrate performs a judicial act when she issues a warrant. State v. Matthews, 270 N.C. 35, 39, 153 S.E.2d 791, 795 (1967); Foust v. Hughes, 21 N.C. App. 268, 270, 204 S.E.2d 230, 231 (1974). See also, Timmerman v. Brown, 528 F.2d 811, 813–14 (4th Cir. 1975) (South Carolina magistrate is entitled to judicial immunity for his acts in issuing, or failing to issue, criminal arrest warrants). To state the obvious, "the exercise of judicial power is a prerequisite to the issuance of a valid warrant." Matthews, 270 N.C. at 39, 153 S.E.2d at 795.

In this matter, upon introducing herself to Defendant Fisher, Plaintiff alleges that she said, "I came to find out what the hell was going on with APD arresting Occupy protesters for marching without a permit." [Doc. 1 at 3]. Plaintiff was clearly addressing Fisher as a magistrate in her role as a judicial

officer responsible for issuing arrest warrants. It is undisputed that Plaintiff "asked Defendant Fisher how many warrants were outstanding and whether there was any procedure for Occupy protesters to turn themselves in. [Plaintiff] inquired whether there was a list of of [sic] protesters that were subject to arrest." [Id.]. The Complaint thus references statements made by Plaintiff to the magistrate, and the magistrate's acts taken in response thereto, in connection with the magistrate's power to issue warrants or conduct initial appearances should persons subject to arrest "turn themselves in." Accordingly, Plaintiff's allegations establish that both prongs of the first factor are met. Based thereon, this Court concludes that Defendant Fisher was performing judicial acts as a magistrate when Plaintiff approached her November 5, 2011.

The second factor in analyzing judicial immunity is whether Defendant Fisher acted in the clear absence of jurisdiction. Under North Carolina law, magistrates are judicial officers. Bradshaw v. Admin. Off. of the Courts, 320 N.C. 132, 357 S.E.2d 370 (1987). The North Carolina legislature has prescribed by statute many of the functions authorized to be performed by magistrates, most of which require independent judgment by a judicial officer. N.C. Gen. Stat. § 7A-273. Significantly, the legislature has granted magistrates contempt power. N.C. Gen. Stat. § 7A-292(2). Accordingly,

Defendant Fisher was not acting in the clear absence of jurisdiction when she held Plaintiff in criminal contempt. The fact that Plaintiff's contempt conviction was later vacated by the North Carolina Court of Appeals due to a legal error does not improve the Plaintiff's position. Plaintiff's entire encounter with Defendant Fisher was undertaken in connection with Fisher's role as a judicial officer within the subject matter jurisdiction accorded magistrates by the State and she is thus entitled to immunity for her acts taken thereby.[4] In fact, Plaintiff's advocating to the Court of Appeals that Defendant Fisher had committed a legal error is a concession that Defendant Fisher was acting in some sort of judicial capacity to make that legal error in the first place. Accordingly, Plaintiff's fifth objection that the M&R erroneously concludes that Defendant Fisher is entitled to absolute judicial immunity is overruled.

### B. Alleged Perjury.

Plaintiff contends Defendant Fisher committed perjury when testifying against Plaintiff during Plaintiff's trial *de novo* before the Buncombe County Superior Court. Plaintiff considers Fisher's alleged perjury to be the "core of the case" as it also provides the basis for the North Carolina State Bar's

---

[4] Even though Fisher imposed a "cash-only" bond in violation of local policy, such an error does not eliminate her immunity. King, 973 F.2d at 357; Pressly, 831 F.2d at 517.

disciplinary proceeding commenced against her.[5] [Doc. 58 at 2]. While Plaintiff makes clear that Fisher's alleged perjury is of the utmost importance to her, Plaintiff fails to make any argument as to how the alleged perjury of a (state actor) witness in a state court proceeding forms any basis for a federal civil rights claim.

It appears that Plaintiff seeks to present a collateral attack on the state court proceeding itself. More precisely, Plaintiff claims she was wrongfully convicted of contempt due to Fisher's alleged perjury, and that Plaintiff's federal action brought in this Court is her effort to right that wrong. Construed in this manner, Plaintiff's claim is clearly controlled by the <u>Rooker-Feldman</u>[6] doctrine and this Court is without subject matter jurisdiction to entertain such claim.[7]  <u>See</u> <u>Lance v. Dennis</u>, 546 U.S. 459, 460 (2006) (holding that the <u>Rooker-Feldman</u> doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by "state-court losers" challenging state-court

---

[5] Despite claiming that Fisher's alleged perjury is the "core of the case," Plaintiff fails to explain what Fisher's testimony has to do with the State Bar proceeding, or even what is at issue in the State Bar proceeding.

[6] <u>Dist. of Columbia Ct. App. v. Feldman</u>, 460 U.S. 462 (1983); <u>Rooker v. Fid. Trust Co.</u>, 263 U.S. 413 (1923).

[7] Although Defendant Fisher does not explicitly raise the <u>Rooker-Feldman</u> doctrine, she seeks to dismiss Plaintiff's claim for want of subject matter jurisdiction pursuant to Rule 12(b)(1), as well as pursuant to Rule 12(b)(6). [Doc. 41].

judgments rendered before the federal district court proceedings commenced).

The Court recognizes that a § 1983 claim based on the fabrication of evidence has been held to be outside the scope of Rooker-Feldman. Washington v. Wilmore, 407 F.3d 274 (4th Cir. 2005). The court in Washington, however, went out of its way to explain that the claim could not be based on false *testimony*, but had to be based on some antecedent fabrication, in that case a false report. Id. at 280. In the present case, Plaintiff forcefully asserts that it is Fisher's alleged false *testimony* that is the basis of her claim. "Plaintiff has alleged, in both her initial complaint, as incorporated, and the amended complaint, that Fisher committed perjury in violation of her civil rights during the Buncombe County Superior Court trial of December 1, 2012, [sic] which has been used on [sic] the sole basis for ongoing NC State Bar Disciplinary proceedings against Plaintiff." [Doc. 58 at 2 footnote omitted)]. For these reasons the Court concludes that it does not have subject matter jurisdiction over Plaintiff's claim against Defendant Fisher,[8] and therefore Fisher's motion to dismiss pursuant to Rule 12(b)(1) will be granted.

---

[8] The case of Heck v. Humphrey, 512 U.S 477 (1994) could also serve as a basis for dismissing Plaintiff's claim against Fisher. Heck stands for the proposition that one cannot bring a § 1983 claim that calls into question the plaintiff's criminal conviction unless

Even if the Court had subject matter jurisdiction over Plaintiff's perjury claim, such claim would be subject to dismissal under Rule 12(b)(6). Fisher enjoys absolute immunity from suit for her trial testimony, even if it was untruthful. <u>Briscoe v. LaHue</u>, 460 U.S. 325, 340-41 (1983). In addition, Plaintiff has pleaded facts that foreclose her being able to prove that the alleged perjury caused her harm. Plaintiff was convicted of contempt for using profanity in court. Plaintiff *ADMITS* having done so. She only asserts that she did not use profanity quite as many times as Fisher testified she did. The allegations in Plaintiff's Complaint constitute a concession of the factual basis for her conviction. For these reasons, Plaintiff has not stated a cognizable claim regarding Fisher's testimony, and therefore Fisher's motion to dismiss pursuant to Rule 12(b)(6) will be granted.

### III.  Judge Hill's Supervisory Liability.

Plaintiff's third objection states that the M&R does not adequately address her claim made against Defendant Hill who "is being sued on the

---

certain preconditions are met, one being reversal of the conviction challenged. <u>Id.</u>, 512 U.S. at 483, 486-87. Plaintiff was convicted of contempt by both Defendant Fisher and the Superior Court. The Court of Appeals affirmed the factual finding from both lower courts that Plaintiff's actions were contemptuous but vacated her conviction on procedural grounds. In light of this Court's dismissal of this claim based on the <u>Rooker-Feldman</u> doctrine, the Court need not reach the issue of whether the vacateur of Plaintiff's contempt conviction would satisfy this precondition given that such reversal was due to legal error as opposed to "some extortionate perversion of lawfully initiated process to illegitimate ends." <u>Id.</u>, 512 U.S. at 486, n.5.

basis of *supervisory liability* over Fisher and a 'rouge' [sic] magistrate's office." [Doc. 58 at 3]. In particular, Plaintiff contends that Defendant Hill failed to supervise and train the Buncombe County magistrates, including Defendant Fisher, as well as prevent them from engaging in unconstitutional practices. [Id.]. This objection is based upon a false premise, namely, that Defendant Hill (or any North Carolina Chief District Court Judge) is responsible for the training and supervision of the magistrates within his/her judicial district.

Article 16, Chapter 7A of the North Carolina General Statutes, provides for the appointment, qualifications, training, compensation, suspension, and removal of magistrates. The training of magistrates is specifically identified as a responsibility of the Administrative Office of the Courts, which the Legislature has "authorized to contract with the School of Government at the University of North Carolina at Chapel Hill or with any other qualified educational organization to conduct this training, and to reimburse magistrates for travel and subsistence expenses incurred in taking such training." N.C. Gen. Stat. § 7A-177(a). No statute, regulation, or case places state magistrates under the direct control and supervision of their local Chief District Court Judges, and Plaintiff has cited no authority for this proposition. The only role played by a Chief District Court Judge is to determine, after a

petition to remove a magistrate has been filed with the respective county Clerk of Court, whether to dismiss the petition or to grant the petition preliminarily and suspend the magistrate based upon misconduct alleged in the petition. N.C. Gen. Stat. § 7A-173(b). If the Chief District Court Judge determines to grant the petition and preliminarily order the suspension of a magistrate, a removal trial for that magistrate is thereafter had before a Superior Court Judge. N.C. Gen. Stat. § 7A-173(c). Other than making an initial suspension determination, the Chief District Court Judge has no oversight duties or responsibilities for the magistrates appointed in the same district. Plaintiff concedes that Defendant Hill's decision to deny Plaintiff's Petition to Remove Defendant Fisher is entitled to judicial immunity. [Doc. 58-4]. Accordingly, Plaintiff's third objection that Defendant Hill failed to supervise and train the Buncombe County Magistrates, including Defendant Fisher, is overruled. The claim against Defendant Hill should be dismissed with prejudice.

## IV.   Conditions of Detention Claim.

Plaintiff's sixth objection states that the M&R erroneously concludes that Plaintiff failed to allege, as against Defendants Duncan and Doe[9], "any

---

[9] Plaintiff's sixth objection is directed at the M&R's recommended dismissal of Plaintiff's § 1983 claim asserted against both Defendant Duncan and Defendant Doe. The Court has already concluded that Plaintiff's claim against Defendant Doe be dismissed based

serious deprivation of a basic human need to support a 1983 claim upon her allegations [of] intentional sleep deprivation for 48 hours, finding, without any citation of authority, this to be *de minimus* injury." [Doc. 58 at 9-11]. Plaintiff states that she "has alleged a pattern and practice of intentional sleep deprivation, as occurred in her case, based on the first 24 hours of detention in sub-zero temperatures,[10] followed by a second 24 hours of 15-minute observational status, intentionally designed to induce sleep deprivation."[11] [Id. at 10]. Plaintiff's objection fails for two independent reasons.

---

on the statute of limitations. Part I, *supra*. Accordingly, the Court will omit any reference to Defendant Doe in this part of its discussion. Nevertheless, this part of the Court's discussion would apply to Defendant Doe if he were not otherwise dismissed.

[10] Plaintiff's reference to "sub-zero temperatures" is utter hyperbole, as well as inconsistent with the facts she pled in her Complaint. The Complaint alleges that Plaintiff's first 24 hours of confinement were spent in a large holding cell "intentionally kept at a low temperature." [Doc. 1 at 6; 9]. For the BCDF to maintain "sub-zero temperatures," it would require more than the mere absence of heat, it would demand the affirmative act of refrigeration given that the high temperature for Asheville on November 6, 2011, was 61 degrees Fahrenheit. Recorded Extremes and Variations In the Environment and Weather for November 6, 2011, State Climate Office of North Carolina, available at, http://climate.ncsu.edu/cronos/review?month=11&day=6&year=2011&Submit=Submit (last visited Mar. 9, 2016).

[11] It should be noted that this claim is found nowhere in Plaintiff's Second Amended Complaint. [Doc. 33]. In that version of her allegations, Plaintiff incorporates by reference several paragraphs of her original Complaint [Doc. 1], but does NOT incorporate paragraphs 53 to 57, wherein this claim is found. As such it would appear that Plaintiff has abandoned this claim by the filing of a subsequent pleading. Due to her response to the motion, however, Plaintiff appears to think that she has not. Again, though Plaintiff is a North Carolina attorney, she appears to be so unfamiliar with ordinary litigation practice in this Court that she is given herein the benefit of the doubt as though she were a non-lawyer, *pro se* plaintiff.

First, Plaintiff has failed to allege any facts that would support her claim that Defendant Duncan engaged in any unconstitutional "pattern and practice." Plaintiff has only alleged, in a conclusory fashion, that keeping the holding cell cold was a "policy" of Defendant Duncan yet she offers no facts to support that conclusion. Further, Plaintiff has not alleged any foundation for the Sheriff's purported "policy" nor has she identified any other persons or instances (apart from those with whom she was detained for 48 hours) affected by such "policy." One single event does not constitute a pattern or practice.

Similar to her request for discovery to identify Defendant Doe, "Plaintiff alleges that discovery will reveal the Sheriff Van Duncan had personal knowledge of the low temperatures in the holding cells and intentionally created such a policy so as to lead to sleep deprivation of those appearing in court." [Doc. 22 at 2]. The Plaintiff's discovery request is misplaced. The costs of modern federal litigation and the increasing caseload of the federal courts counsel against sending the parties into discovery when there is no reasonable likelihood that the plaintiff can construct a claim from the events related in the complaint. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557 (2007). One of the explicitly stated purposes underlying the plausibility standard for pleading established by the Supreme Court in Iqbal and

Twombly is to eliminate civil suits "at the point of minimum expenditure of time and money by the parties and the court." If a plaintiff has not alleged facts sufficient to advance a claim past possible to plausible, she is not entitled to engage in discovery in an effort to salvage that claim. For these reasons alone, Plaintiff's objection should be overruled. Plaintiff's objection, however, fails for a second, independent, reason.

Plaintiff alleges that during her first 24 hours of confinement, she was cold, uncomfortable and had difficulty resting. [Doc. 1 at 6]. During her second 24 hours of confinement, Plaintiff alleges she was kept from sleeping. [Id.]. Plaintiff thus raises a constitutional conditions-of-confinement claim as identified by the Magistrate Judge in his M&R. [Doc. 55 at 5]. The Supreme Court has made clear that not all deprivations attending an inmate rise to the level of constitutional concern.

> The objective component of an Eighth Amendment claim is therefore contextual and responsive to contemporary standards of decency. For instance, extreme deprivations are required to make out a conditions-of-confinement claim. Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. A similar analysis applies to medical needs. Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are serious.

<u>Hudson v McMillian</u>, 503 U.S.1, 8-9 (1992) (internal citations and quotations omitted).  At best, as alleged by Plaintiff, she was uncomfortable her first day of confinement and not permitted to sleep her second night in jail.  These "deprivations" are more closely aligned with "routine discomfort" and fall far short of the level of acts held to be unconstitutionally cruel and unusual. For examples of prison conditions held to be unconstitutionally cruel and unusual, see <u>Hutto v. Finney</u>, 437 U.S. 678, 681-82 nn.3-5 (1978) (prison farm required its 1,000 inmates to work in the fields 10 hours a day, six days a week, using mule-drawn tools and tending crops by hand; inmates worked in all sorts of weather, so long as the temperature was above freezing, sometimes in unsuitably light clothing or without shoes; some inmates were apparently whipped for minor offenses until their skin was bloody and bruised; the "Tucker telephone," a hand-cranked device, was used to administer electrical shocks to various sensitive parts of an inmate's body; homosexual rape was so common and uncontrolled that some potential victims dared not sleep but instead would leave their beds and spend the night clinging to the bars nearest the guards' station).

Plaintiff has not alleged she suffered any deprivations approaching those identified in <u>Hutto</u>. She has merely asserted that for one night she "was forced to curl up in a ball to conserve body heat, shivering, and was unable

to relax." [Doc. 1 at 6]. Likewise, while Plaintiff complains that a deputy knocked on her cell window the second night of her confinement, her loss of sleep therefrom did not inhibit her ability to obtain a change in her bond conditions and successfully argue for her own release in Superior Court the following day. Finally, none of Plaintiff's alleged maladies impacted her ability to represent herself, testify on her own behalf, and cross-examine Defendant Fisher at her trial *de novo* conducted December 1, 2011. The conclusion of law set out in the M&R is correct that whatever discomfort Plaintiff endured for 48 hours rose only to a *de minimis* level that presents no constitutional deprivation. For these reasons, Plaintiff's sixth objection to the M&R is overruled and the claim against Defendant Duncan should be dismissed with prejudice.

## V.    Equitable and Declaratory Relief.

Plaintiff states as her fourth objection that the M&R "failed to acknowledge Plaintiff has asserted claims for declaratory and injunctive relief on all counts, which is not barred by judicial immunity, to Plaintiff's knowledge." [Doc. 58 at 4].[12]  Plaintiff is correct both that the M&R neglected

---

[12] It must be noted that Plaintiff's objection to the M&R on this basis consists of a mere three sentences comprising one paragraph. Plaintiff mentions no claim, except for those against Defendants Fisher and Hill. These are precisely the sort of non-specific "shotgun" objections that are insufficient to present or preserve a claim. An objection must be made "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." Midgette, 478 F.3d at 622. See also, Orpiano, 687 F.2d at 47 (district

to discuss her equitable and declaratory claims and that equitable relief is an available remedy pursuant to § 1983 action.  See, e.g., Pulliam v. Allen, 466 U.S. 522, 541-42 (1984) (in a suit brought pursuant to 42 U.S.C. § 1983, judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity).  Plaintiff's objections regarding her equitable and declaratory claims must, nevertheless, be overruled.

### A.    Request for Equitable Relief.

It is axiomatic that the availability of equitable relief is dependent upon a showing, at the very least, of the risk of irreparable harm and the absence of any adequate remedy at law.  eBay Inc. v. MercExchange, L.L.C., 546 U.S. 388, 391 (2006).  Plaintiff fails to allege any facts plausibly asserting either of these requirements.

In addition, regarding Defendants Duncan and Doe, the Court has previously explained that Plaintiff failed to allege any facts from which the Court could glean that the Sheriff's Department maintains or employs a policy, practice and pattern of sleep deprivation aimed at inmates under their

court need not conduct a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations.").  Plaintiff does not even argue that injunctive or declaratory relief should lie regarding Defendants Duncan and Doe, except to say that she pleaded for such relief "on all counts." [Doc. 58 at 4]. This gives the Court no notice as to whether she contends such relief is warranted, much less the grounds.  For this reason, in addition to the reasons set forth infra, any claims for injunctive and declaratory relief against Defendants Duncan and Doe will be dismissed.

control.  [Doc. 22 at 5].  Where there is no right, there is no remedy.  There being no viable claim of such a future unconstitutional harm, Plaintiff is entitled to no equitable relief against these two Defendants.

In a like manner, Plaintiff has failed to allege any facts giving rise to a plausible claim that the Buncombe County magistrates were "rogue" officers, either individually or collectively, such that their continuation of their manner of practice must be enjoined.  [Doc. 33 at 9].  Plaintiff asserts that Defendant Fisher's issuance of a "cash-only" bond was "illegal" and that such illegality must not be permitted to continue.  [Doc. 1 at 8; Doc. 33 at 9].  Fisher's custodial order, however, was not "illegal."  Cash-only bonds are specifically authorized by statute.  See, N.C. Gen. Stat. § 15A-534(a)(4) (as a condition of release, the judicial officer may require the execution of an appearance bond in a specific amount secured by a cash deposit of the full amount of the bond).  Fisher's actions may have been contrary to department policy, but Plaintiff presents no argument that she would be entitled to any injunctive relief to enforce such a policy.  It is true that a magistrate's practice of setting cash-only bonds was held unconstitutional in Pulliam (a case Plaintiff does not cite).  Id., 466 U.S. at 541-42.  In Pulliam, however, the plaintiff was being held on a charge for which he could not be imprisoned if convicted.  466 U.S. at 524-25.  In the present case, Plaintiff was subject to incarceration on the

contempt charge, and thus Fisher's setting terms for her release – including a cash-only bond – was not "illegal."

Regarding Defendant Hill, as explained above and due to North Carolina's statutory framework, he has no supervisory role over Defendant Fisher or any other magistrate in his judicial district. With there being no viable claim against Defendant Hill for any future unconstitutional harm, Plaintiff is entitled to no equitable relief against him.

For these reasons, Plaintiff has presented no cognizable basis for injunctive relief.

## B. Request for Declaratory Relief.

In seeking declaratory relief, Plaintiff states the following:

> Plaintiff requests Declaratory Relief against both Defendant Fisher in her official capacity to declare violations of Plaintiff's civil rights, as alleged, from her illegal conviction and detention, as well as prosecution and review in the Court of Appeals based on the perjured testimony of Defendant Fisher, and resulting ongoing damages relating to the North Carolina State Bar, and to declare unconstitutional intentional bond practices of the Buncombe County Magistrate's Office, as alleged herein. Declaratory relief is not barred by Eleventh Amendment immunity.

[Doc. 33 at 9 ¶25]. The Court construes this to be a request that it declare Fisher's actions of holding Plaintiff in contempt, in setting the cash-only bond, and in testifying against her (allegedly falsely) constitute violations of

Plaintiff's civil rights. The Court has already discussed, however, that the Plaintiff fails to state a claim with regard to each of these actions.

The Declaratory Judgment Act provides that in a case of actual controversy, district courts may declare the rights of interested parties. 28 U.S.C. § 2201(a). However, as noted, the district courts' authority to entertain declaratory judgment cases is discretionary. In fact, the Fourth Circuit has cautioned that district courts should only do so in the following circumstances: (1) "when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue," and (2) "when it will terminate and afford relief from uncertainty, insecurity, and controversy giving rise to the proceeding." United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 493 (4th Cir. 1998); Aetna Cas. & Sur. Co. v. Ind–Com Elec. Co., 139 F.3d 419, 422 (4th Cir. 1998) (district courts have great latitude in determining whether to assert jurisdiction over declaratory judgment actions). Neither of these factors will be met by this Court continuing to exercise jurisdiction over Plaintiff's request for such declaration. All other claims are being dismissed – Plaintiff states no cognizable claims. Moreover, since the Court is dismissing Plaintiff's claims against Defendant Fisher for want of subject matter jurisdiction, it is very questionable whether this Court would have jurisdiction to **declare** Defendant Fisher's actions

unconstitutional.  Hence, the Court, in its discretion will decline to entertain this declaratory judgment claim.

Plaintiff's oblique reference to the North Carolina State Bar appears to indicate that Plaintiff seeks this Court's declaration so that this Court can dictate to the State Bar that Plaintiff was wronged – and thus by implication that Plaintiff should not be disciplined.  The State Bar's disciplinary process, however, is a matter that is *entirely* outside the purview of this Court.  For this Court to wade into that dispute in the guise of a declaratory judgment action would be a poor exercise of discretion. When related state court proceedings are pending, "considerations of federalism, efficiency, and comity should inform the district court's decision whether to exercise jurisdiction over a declaratory judgment action."  Penn–America Ins. Co. v. Coffey, 368 F.3d 409, 412 (4th Cir. 2004) (internal quotations and citations omitted).  After having examined the pleadings and having observed that a related state court proceeding is pending, the Court will refrain from entertaining the Plaintiff's request for declaratory relief in this matter.

## ORDER

**IT IS, THEREFORE, ORDERED** that: the joint Motion to Dismiss filed by Defendant Amanda Fisher and Defendant Calvin Hill [Doc. 41] is hereby **GRANTED**; the Motion to Dismiss filed by Defendant Jack Van Duncan [Doc.

43] is hereby **GRANTED**; the Motion to Dismiss filed by Defendant John Doe [Doc. 48] is hereby **GRANTED**; the Magistrate Judge's Memorandum and Recommendation regarding the disposition of those motions [Doc. 55] is hereby **ACCEPTED**; and the Plaintiff's Objections to the Magistrate Judge's Memorandum and Recommendation [Doc. 58] are hereby **OVERRULED**. The Plaintiff's action as set out in her Complaint [Doc. 1], her First Amended Complaint [Doc. 22], and her Second Amended Complaint [Doc. 33], is hereby **DISMISSED with prejudice**.

**IT IS FURTHER ORDERED** that the Court declines to exercise its discretion under 28 U.S.C. § 2201(a), and the Court thus **ABSTAINS** from entertaining the Plaintiff's request for declaratory relief in this matter, and said claim is likewise **DISMISSED**.

**IT SO ORDERED**.

Signed: March 9, 2016

Martin Reidinger
United States District Judge